Good morning. Good morning, Your Honors. May it please the Court, this case is an interesting case. It's not actually against the Colorado Bar. They're one of the amicus that supported our position. This is a case that we believe can be resolved by following one simple rule. It's a rule that was stated in the Land Title Association amicus brief. And they said, I think well said, if a document is recorded outside the chain of title, it is the equivalent of not being recorded at all. And that's what this deed of trust is. It was recorded at a time when the grantor of the deed of trust was not on title. And therefore, under I believe every reported Colorado decision is a nullity, effectively. So as I understood your briefing, you were not really tracking what the amicus was saying. Yeah. But you have now been convinced by their position. No, no, no. Well, so the In a way. In a way, yeah. We were a little surprised when we saw that brief. So and that's the next point that I wanted to make was that I think the court can rule, can reverse both of the lower courts without actually deciding the distinction that's drawn between the amicus's brief, the mickey's brief, and our brief. And that is, we took the position, take the The amicus, their position is that because it was outside of the chain of title, it never became perfected, right? And I take it that both parties are in agreement that at some point it was perfected. Is that your understanding? Well, that's the, that was the position of the appellant and the appellee. The amici Just said parties. Yes, yes, exactly. Parties are of the view that it was ultimately perfected. The amicus brief takes a different position on that issue. Exactly, exactly, Your Honor. But that doesn't, I think does not impact the relief that we seek because under 11 U.S.C. 547E2, under E2B, if it was perfected on August 3rd of 2015, it's a preference because that was within 90 days of the bankruptcy. If it wasn't perfected, then under E2C, it's deemed perfected immediately before the bankruptcy. And so then it's also a preference. And so I would submit, Your Honor, that, that you can, you can resolve this question in favor of the trustee without actually passing on whether, without deciding whether it was perfected on August 3rd or never at all. Couldn't we also just accept, assume our window that it was perfected along the lines of both of the parties and then just say that the only question really is timing? Yeah, I think you could do that as well. I think that makes sense as well. Well, but can you pass, can you pass an interest in property when you don't have the interest to pass? I'm sorry, I couldn't hear you. Can you pass interest in property when you don't have the interest to pass? And we're talking about a bona fide purchaser. And what would a bona fide purchaser see when they looked at a chain of title here? Isn't that the issue? Well, that's the issue. I mean, that's, you can't, I mean, that, exactly. And that's what, that's what several of these Colorado cases talk about is that you can't, if you're not on title, you can't pass title. And that's where the BAP, you know, the BAP opinion is curious because, you know, it goes along for the first 12 pages and it seems like they've got all the case law right and they talk about this being a wild deed. And then all of a sudden they walk through this 547E hypothetical of, you know, during the period when the debtor wasn't on title, if the debtor had sold the property to a BFP, the BFP would have been on notice, which makes no sense at all because the debtor couldn't have sold the property when she wasn't on title. And a BFP, or a purchaser couldn't have been a BFP at that point because they had nothing to purchase. So, the BAP opinion... Could there be a transfer of an equitable interest? There can, and that would be, I suppose that would be binding between the parties to the transaction, but it would have no impact as to the world, which is the whole point of the Recording Act. Right? It's the only, it's only of record interest that are binding on third parties. Otherwise, it's impossible to figure out who has title, who owns, who has liens, and so forth. And so absolutely, to the, I mean, to the extent you can even transfer an equitable interest, I suppose, you know, then I suppose you could outside of title, but it would only be binding on those two people and not as to anybody else. So, how does the Fiscus case, for example, play out in what we were just talking about? Is the Fiscus case the one where it's the husband and wife? It's the husband and wife, yes. Right. So, that's the one where, where I think the court of appeals in that case actually says that the wife, she had nothing to transfer because they were married. She had an equitable, arguably an equitable interest as the spouse, but because the husband was on title, even if her husband had actually authorized her to do anything, well, that's not true, but... Well, what I understood from the case, and let's see if this is congruent with your recollection. What I understood from the case was it acknowledged that she could, she had essentially an in co-ed equitable interest. So, it's not like that can't exist. And so, in this situation, you could arguably say that the debtor, let's say arguably, along the lines of this case, what was it? Pandy? Yeah, Pandy. Let's say along the lines of Pandy that the debtor had an equitable interest, okay. And theoretically, the debtor could do something with that equitable interest, but Fiskus would seem to suggest that that could not affect the ability of recordation, the issue that you're talking about as it relates to the third world. I mean, as it relates to the rest of the world, third world. Yeah. If I understand your question correctly, Judge, that's exactly our point. I mean, so maybe the wife could have conveyed something, but it would have been of no effect to anyone else. It wouldn't have put anybody on notice. It wouldn't have been binding on third parties. It wouldn't have been binding on a subsequent purchaser or subsequent mortgagee, nobody. We, you know, there's a pending motion to certify this question to the Colorado Supreme Court, and I'm not going to argue that other than to say that I think that if the court were to simply reverse the bankruptcy court on the BAP on the point that I made earlier that this was a wild deed, that I don't think it needs to be certified at the Supreme Court, because that's consistent with every case. I mean, that's- Why in the world would, I don't, I'm puzzled by the notion that you think we should certify it anyway. I mean, you're saying that this is contrary. I mean, part of your brief, I think, says contrary to more than a century of settled Colorado law. Well, if Colorado law is settled, then what are we certifying to them? So, my concern, Your Honor, is that if you, if this court is to affirm the bankruptcy court's ruling, that is contrary to Colorado law. And so, that would upset Colorado law. And so, if that is the direction the court's going, it seems to me that this should go back to the state court because this is an absolute issue of Colorado law. If you're going to follow Colorado law, then- I don't think that that's normally the way that certification is conditioned. If you're going to run away from Colorado law, certify. If you're not, then you don't need to certify. The bottom line would be, if we interpreted Colorado law in a certain way, obviously, we would be saying it was congruent with Colorado law, right? Well, I guess, except for the problem- That'd be our opinion, right? It would be your opinion. Yes, that's correct, Your Honor. But the problem is that both the bankruptcy court and the BAP, neither one of them cite a single Colorado case for their actual ultimate conclusion. I thought that the bankruptcy court relied on Pandy, didn't it? It sort of relies on Pandy, but it doesn't really ever exactly say how Pandy impacts recording, right? I mean, the court says that I'm following the Recording Act. I'm following 3835-109, and I'm also following Pandy. Pandy doesn't even mention 3835-109. Well, but I thought the point there, it was a little subtle, I agree. But I thought the passing of interest that occurred here occurred in Pandy, that the person that is the holder of the trustee, this is a family trust, right? Family trust, yeah. That that individual retains some kind of interest? Correct. And so I guess the theory was, if there's some interest retained, then there's some subsequently and then recorded. I mean, it's a little vague, but I guess that was the point, because Pandy does talk about a retained interest in a family trust. And doesn't it talk about the ability to encumber that interest via a judgment lien? I would take issue with the use of the word encumber there, Your Honor. I think what Pandy says is that a judgment lien can attach, it can be enforceable as to an equitable interest. It doesn't say anything about perfection or encumbering, which I think is the notion of granting a third party an interest consensually that is then recorded in the real property records and perfected. OK, but you can attach, a judgment lien can attach to an equitable interest. And I assume that what the Bankruptcy Court was saying is one step removed from that is a situation where you can record as to an equitable interest. I totally agree, Your Honor, but that's not what Pandy says. Pandy doesn't talk about, they never mention recording. They never talk about perfection. That case is only about attachment as between a judgment lien creditor and a judgment debtor. And in that case, there were no liens on the property otherwise. So the court never was tasked with asking the priority question, which this court did in the Bryan case. That was the case where there actually were mortgages out there, and there was a judgment lien. And the court found that the prior recorded, that the mortgages that were in title were prior to the judgment lien that came later. But Pandy, I mean, as I said in the brief, and I'm saying it again, Pandy does not address perfection. It only talks about as between a judgment creditor and a judgment debtor. And what it says is that the judgment creditor's lien can attach to the equitable interest, and so it can then enforce it. It doesn't say that it would then somehow trump a mortgage that was granted by the record title holder. Well, there is some statement in the bankruptcy rulings about individuals seeing a quick claim deed in a chain of title, or just knowing one's out there. I don't know how you know one's out there if nothing's recorded. But if there's a quick claim deed anywhere, then there's a duty to examine and search. What do we do with that? Well, that was the BAP's second finding, right? The first finding was this idea that the debtor when she wasn't in title could convey. Their secondary holding, well, their finding was that what you just said, Your Honor, which is that if you see a quick claim deed in title, that in and of itself is enough to trigger a duty to inquire. That was explicitly rejected by the Colorado Supreme Court in the Franklin Bank case. I mean, it couldn't, I don't think, say it any clearer. They talk about how maybe that used to be the law, but it's no longer the law. And a quick claim deed in and of itself is not something that is an irregularity that would prompt someone to, or require somebody to dig further. Again, the inquiry notice, the irregularity cases, they talk about an irregularity in the chain of title, right? This is out of the chain of title. This has nothing to do with the chain of title. So that's the problem here, and that's where I think that both the Bankruptcy Court and the BAP missed it. Can I reserve the rest of my time? You sure can. It's your time. Thank you. Good morning, Your Honor. It's Philip Jones on behalf of the Appalese, L. Edmund Cates, and Jan Riddell Cates. In this particular situation, we think that the BAP decision or under the bankruptcy, Judge Romero's decision in this particular case, the BAP case basically said because of the quick claim deed, it created the irregularity that requires further investigation for a bona fide purchaser. And what the BAP court said was you transfer is from the debtor, then that is whose name searched the debtors in this situation, Diane Cates. So if you did a search of that, you would see the deed of trust being recorded on this particular property. I think also the factual situation in this case creates a little bit more of an irregularity in that if you look at where the debtor acquired the property when she was quick claimed the property in August of 2015, the quick claim deed was from Diane Cates, family trust, irrevocable one party living trust. So in essence, it was Diane Cates to Diane Cates. And if you go back and look at the quick claim deed from the deed of trust, that's also the situation you have is Diane Cates conveying the property to Diane Cates, family trust, irrevocable one party living trust. That would create an irregularity that would require somebody to look a little further into the research. And what authority do you have for that? What's necessarily irregular about that? Well, it creates the irregularity that requires somebody to do a little further investigation on the chain of title than just the bare chain of title grantor to grantee. And forgive me, I don't think you answered the question. What was the authority to support that that in itself categorically is an irregularity? The BAP court did not cite any particular authority. And do you have any? I do not, Your Honor. And what about this Franklin case that was alluded to earlier that suggests that a quick claim deed is not in itself an irregularity? What do you say about that? A quick claim deed in and of itself may not be, but then a quick claim deed from Diane Cates to Diane Cates. A principle for which you have no authority, right? Correct, Your Honor. Okay. And how would you know that? I mean, when you say, well, in essence, we really know now that she was really just transferring it to herself, anyone just looking at the documents would see the full phraseology, which was not Diane Cates to Diane Cates. It was family trust. The fact that it creates both names pop up would require, I think, a further investigation under the chain of title. As the BAP court determined, though, a transfer, a preferential transfer, when the transfer occurred and what was transferred is a matter of federal law to decide. And so the BAP course basically said, because when the promissory note was first issued, the debtor owned the property, when the deed of trust was first signed, the debtor owned the property. It was then when the deed of trust was recorded that it becomes the perfection issue. And perfection is controlled by state law, right? Perfection is controlled by state law, and then that's when the BAP court said, would a BFP looking at this chain of title purchase the property? Would they be put on notice of this deed of trust? And if you did a grantor search of Diane Cates, you would see the deed of trust popping up on this particular property. But if you put the BAP's decision aside, I think Judge Romero's decision in the bankruptcy court is still a basis for affirming the decision under the Pandy case. And in essence, what the court is saying is property that's owned by an individual and property owned by their self-settled trust is in essence owned by the same people. You have an interest in that property, whether it be under the trust title or whether it be under the individual title. In the Pandy case, I think it was a little bit more different than Appellant seems to argue, because in the Pandy case, the court said that the creditor did not have to sue the trust in that particular property. They said that judgment lien attached to the property. There was no need to bring the trust in as a defendant in that particular action. So we think that... But Pandy is a lien enforcement case involving the rights of a creditor. How does that translate to our case, where we're trying to determine the recording chronology of property and whether there was notice in the title of recording of interests? Whether the lien be recorded or the deed of trust be recorded, it's recorded against either the self-settled trust property or the debtor's property, which Pandy said, in essence, is one and the same. So we believe this court can affirm that decision under either the BAP decision or Judge Romero's bankruptcy decision. Thank you. Thank you, counsel. Thank you, Your Honors. The idea that the transfer from Diane Cates to the Diane Cates revocable trust in and of itself is an irregularity, leaving aside the Franklin Bank case that says that's not true, there's also a statute in the real property statutes that says trusts can hold title to property. So why there would be an irregularity when a property is legally  transferred from an individual to an entity doesn't make any sense. Mr. Jones' argument that if a title examiner was examining title in connection with a sale made by the debtor of the property at a time when she wasn't on title, that the examiner would see the deed of trust, it misses the point. What the title examiner would first see is that the debtor was powerless to sell the property because she didn't own it. So that's where the BAP got it wrong. We asked, obviously, for reversal. Reversing the BAP, I think, is a pretty straightforward proposition to the extent that's even necessary. The bankruptcy court decision is the one that I think is more problematic and the one that it's very important that it be reversed because, as I think both of the amici said eloquently in their briefs, that opinion, if what Judge Romero said is correct. It's the one that's under review, right? That's correct, Your Honor. It's always a little confusing when you have the BAP. But I agree. I think Judge Romero's ruling is the ultimate one that would be reversed. At most, the BAP opinion would presumably be an alternative ground for affirmance if that's what we were going to do. That is correct. Yes. So I assume if you reversed Judge Romero, then that would, even if you didn't address the BAP opinion, that that opinion would be meaningless. Right. The focus in this type of case is on the bankruptcy court's ruling. Right. And the BAP, we don't even give it deference. Okay. So the bankruptcy court ruling presents this possibility of, I mean, it almost makes it impossible to ensure title, right? Because basically what the bankruptcy court says is unrecorded interests have the power to affect title. And so how could anybody, looking into a transaction, looking into ensure title, looking to buy property, looking to lend against the property, there's no guidance there. There's no ability to determine at what level what you're looking for. If it's unrecorded, you'll never be able to know. And so we would just submit, Your Honors, that it's very important that that decision not be allowed to stand just for purposes of title in Colorado. Thank you. Thank you, counsel.